UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2013-1416

ESSAR STEEL, LIMITED,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

and

UNITED STATES STEEL CORPORATION,

Defendant-Appellee.

Appeal from the United States Court of International Trade in case no.
09-CV-0197, Senior Judge Judith M. Barzilay.

BRIEF OF DEFENDANT-APPELLEE
UNITED STATES STEEL CORPORATION

<div style="margin-left:40%">

Robert E. Lighthizer
Jeffrey D. Gerrish
Nathaniel B. Bolin
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
(202) 371-7000

</div>

November 14, 2013

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

ESSAR STEEL, LIMITED V US

2013-1416

## CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee, United States Steel Corporation, certifies the following:

1.      The full name of every party or amicus represented by me is:

United States Steel Corporation

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4.      [x]     There is no such corporation as listed in paragraph 3.

5.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Skadden, Arps, Slate, Meagher & Flom LLP:   Robert E. Lighthizer, Jeffrey D. Gerrish, and Nathaniel B. Bolin.


        /s/ Jeffrey D. Gerrish

    November 14, 2013          Signature of counsel
            Date

                              Jeffrey D. Gerrish
                              Printed name of counsel

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ....................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF THE CASE...............................................................2

STATEMENT OF FACTS ....................................................................4

SUMMARY OF ARGUMENT .............................................................18

STANDARD OF REVIEW ..................................................................20

ARGUMENT ......................................................................................23

I.      Commerce Correctly Corroborated The Subsidy Rates Applied As AFA
        With Respect to Essar's Use Of And Benefit From The Nine CIP
        Subsidies ..................................................................................23

II.     The CIT Properly Determined That Essar Failed To Exhaust Its
        Administrative Remedies ............................................................37

III.    CONCLUSION............................................................................48

CERTIFICATE OF COMPLIANCE.....................................................49

# TABLE OF AUTHORITIES

## CASES

Asociacion Colombiana de Exportadores de Flores v. United States, 6 F. Supp. 2d 865 (Ct. Int'l Trade 1998) ....................................................................20

Carpenter Tech. Corp. v. United States, 510 F.3d 1370 (Fed. Cir. 2007) ...............20

Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352 (Fed. Cir. 2005) ....................................................................................................................23

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) .................................................................................................. 21, 22

Consolo v. Federal Maritime Comm'n, 383 U.S. 607 (1966) .......................... 20, 21

Corus Staal B.V. v. United States, 502 F.3d 1370 (Fed. Cir. 2007) .......................39

Essar Steel, Limited v. United States, 2011 Ct. Intl. Trade LEXIS 10, Slip. Op. 2011-10 (Ct. Int'l Trade Jan. 25, 2011) ...................................................2

Essar Steel, Limited v. United States, 678 F.3d 1268 (Fed. Cir. 2012) .......... passim

Essar Steel, Limited v. United States, 721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010) .................................................................................................. 2, 7, 8, 42

Essar Steel, Limited v. United States, 880 F. Supp. 2d 1327 (Ct. Int'l Trade 2012) ........................................................................................................ passim

Essar Steel, Limited v. United States, 908 F. Supp. 2d 1306 (Ct. Int'l Trade 2013) ........................................................................................................ passim

F.Lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ............................................................. 25, 26, 32

Koyo Seiko Co. v. United States, 36 F.3d 1565 (Fed. Cir. 1994) ..........................22

Lyng v. Payne, 476 U.S. 926 (1986) .......................................................................22

Martin v. Occupational Safety and Health Rev. Comm'n, 499 U.S. 144 (1991) ....22

Mittal Steel Galati S.A. v. United States, 491 F. Supp. 2d 1273 (Ct. Int'l Trade 2007) ........................................................................................................26

Mittal Steel Point Lisas Ltd. v. United States, 548 F.3d 1375 (Fed. Cir. 2008) .................................................................................................. 26, 39

PPG Indus. v. United States, 978 F.2d 1232 (Fed. Cir. 1992).................................21

Sahaviriya Steel Indus. Pub. Co. Ltd. v. United States, 649 F.3d 1371 (Fed. Cir. 2011) ........................................................................................................20

Sandvik Steel Co. v. United States, 164 F.3d 596 (Fed. Cir. 1998) ........................39

Timex V.I. v. United States, 157 F.3d 879 (Fed. Cir. 1998) ...................................21

Timken Co. v. United States, 354 F.3d 1334 (Fed. Cir. 2004)......................... 22, 26

Torrington Co. v. United States, 156 F.3d 1361 (Fed. Cir. 1998)...........................23

Torrington Co. v. United States, 82 F.3d 1039 (Fed. Cir. 1996)............................22

United States Steel Corp. v. United States, 621 F.3d 1351 (Fed. Cir. 2010) ..........20

United States Steel Corporation v. United States, 2010 Ct. Int'l Trade LEXIS 107, CIT Slip Op. 2010-104 (Ct. Int'l Trade Sept. 13, 2013)......................... 13, 14, 42

United States v. L.A. Tucker Truck Lines Inc., 344 U.S. 33 (1952)......................39

Universal Camera Corp. v. NLRB, 340 U.S. 474 (1951).......................................20

Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States, 716 F.3d 1370 (Fed. Cir. 2013) .................................................................................................. passim

Yantai Xinke Steel Structure Co. v. United States, 2012 Ct. Intl. Trade LEXIS 96, Ct. Int'l Trade Slip Op. 2012-95 (Ct. Int'l Trade July 18, 2012).................. 26, 27

Zenith Radio Corp. v. United States, 437 U.S. 443 (1978) ....................................22

## STATUTES

19 C.F.R. § 351.308(d) (2006)................................................................................25

19 U.S.C. § 1516a(b)(1)(B)(I) (2006) ..................................................20

19 U.S.C. § 1677(5)(C) (2006) ...........................................................45

19 U.S.C. § 1677(5)(E) (2006) ...........................................................45

19 U.S.C. § 1677e(a) (2006) .......................................................... 7, 25

19 U.S.C. § 1677e(b) (2006) .......................................................... 7, 25

19 U.S.C. § 1677e(c) (2006) .................................................... 25, 26, 32

28 U.S.C. § 2637(d) (2006) ............................................... 19, 23, 39, 40

## OTHER AUTHORITIES

Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom, 70 Fed. Reg. 54711, 54712-54713 (Dep't Commerce Sept. 16, 2005) (final results) ...............................................................26

Black's Law Dictionary 121 (9th ed. 2009) ...........................................47

Certain Hot-Rolled Carbon Steel Flat Products from India, 74 Fed. Reg. 20923 (Dep't Commerce May 6, 2009) (final results) .....................................1

Certain Hot-Rolled Carbon Steel Flat Products from India, 73 Fed. Reg. 79791 (Dep't Commerce Dec. 30, 2008) (prelim. results) ...............................6

Circular Welded Austenitic Stainless Pressure Pipe from the People's Republic of China, 74 Fed. Reg. 4936 (Dep't Commerce Jan. 28, 2009) ...............................27

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act; reprinted in 1994 U.S.C.C.A.N. 4040 ........................ 25, 26, 45

This case arises from the final results issued by the U.S. Department of Commerce ("Commerce" or the "Department") with respect to Essar Steel, Limited ("Essar") in the administrative review of the countervailing duty order on hot-rolled steel from India (the "Order") covering the period of review ("POR") of January 1, 2007 through December 31, 2007.[1]

## STATEMENT OF RELATED CASES

This case was previously before this Court as <u>Essar Steel, Limited v. United States</u> ("<u>Essar III</u>"), Court Nos. 2011-1270, 2011-1271, and 2011-1289 and was decided on April 27, 2012 by Circuit Judges Newman, Lourie, and Moore in an opinion published in the Federal Reporter as 678 F.3d 1268.  Counsel to Defendant-Appellee United States Steel Corporation ("U.S. Steel") are not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## STATEMENT OF THE ISSUES

The issues presented by this appeal are as follows:

1.    Whether Commerce properly corroborated the subsidy rates that it applied as adverse facts available ("AFA") with respect to Essar's use of and benefit from nine separate countervailable subsidies provided under the Chhattisgarh Industrial Policy ("CIP") of the State Government of Chhattisgarh in India.

---

[1]    <u>Certain Hot-Rolled Carbon Steel Flat Products from India</u>, 74 Fed. Reg. 20923 (Dep't Commerce May 6, 2009) (final results) ("<u>Final Results</u>") (JA 11-14).

2.    Whether the Court of International Trade ("CIT") abused its discretion in holding that Essar had failed to exhaust its administrative remedies and thereby waived certain arguments concerning Commerce's corroboration of the AFA subsidy rates based on Essar's failure to raise such arguments during the proceedings before Commerce.

## STATEMENT OF THE CASE

In Essar III, this Court found that Commerce properly applied AFA with respect to Essar's use of and benefit from the CIP subsidies and that Commerce correctly declined to consider documents produced by Essar only after the application of AFA in this case when determining whether Essar used and benefitted from the CIP subsidies.[2]  The Court further opined that the *ad valorem* subsidy rates applied by Commerce as AFA to the CIP subsidies were "on par with similar subsidy programs and therefore not punitive."[3]

Subsequently, the CIT granted Essar's motion for a remand for Commerce to consider whether the subsidy rates applied as AFA were adequately

---

[2]  Essar III, 678 F. 3d 1268, 1274-1279 (Fed. Cir. 2012).  The CIT first addressed Essar's challenge to the application of AFA in Essar Steel, Limited v. United States, 721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010) ("Essar I").  Following a remand to Commerce, the CIT issued a second decision on the issue in Essar Steel, Limited v. United States, 2011 Ct. Intl. Trade LEXIS 10, Slip. Op. 2011-10 (Ct. Int'l Trade Jan. 25, 2011) ("Essar II") which was the subject of the appeal before this Court in Essar III.

[3]  Id. at 1276.

corroborated.[4]  Commerce issued its draft remand results on November 29, 2012 and sought comments from the parties.[5]

On December 6, 2012, Essar filed comments on the draft remand.[6]  In its comments, Essar again cited the documents and findings that Commerce and this Court had already rejected in Essar III.[7]

On January 11, 2013, Commerce filed its final remand results with the CIT.[8] Subsequently, Essar filed a brief with the CIT challenging the final remand results.[9]  In its brief, Essar raised additional arguments on the issue of corroboration that it had failed to raise in any of its earlier submissions before Commerce or the courts in this appeal.[10]

---

[4]  Essar Steel, Limited v. United States, 880 F. Supp. 2d 1327 (Ct. Int'l Trade 2012) ("Essar IV").

[5]  Draft Remand Results Pursuant to Court Remand, Essar Steel, Limited v. United States, CIT Court No. 09-197(Nov. 29, 2012) ("Draft Remand Results") (Public Document) (JA 500-511).

[6]  Essar Comments on Draft Remand Results (Dec. 6, 2012) (Public Document (JA 145-154).

[7]  Id.

[8]  Results of Redetermination Pursuant to Court Remand, Essar Steel, Limited v. United States, CIT Court No. 09-197 (Jan. 11, 2013) ("Final Remand Results") (Public Document) (JA 512-530).

[9]  Essar Comments on Final Remand Results (Feb. 26, 2013) (Public Document) (JA 155-164).

[10]  Id. at 2-8.

On April 9, 2013, the CIT issued an opinion upholding Commerce's final remand results.[11]  Specifically, the CIT found that Commerce had correctly corroborated the subsidy rates applied as AFA to the nine CIP subsidies.[12]  The CIT also found that Essar had failed to exhaust its administrative remedies and had thereby waived the additional arguments concerning corroboration that Essar had raised for the first time in its brief before the CIT commenting on Commerce's final remand results.[13]

## STATEMENT OF FACTS

Throughout these proceedings, Commerce has been stymied at every turn by the repeated failure of Essar, the Government of India ("GOI"), and the Indian State Government of Chhattisgarh to respond to Commerce's requests for information concerning the operation of the CIP subsidy programs and Essar's use of and benefit from those subsidies.  During the 2007 administrative review at issue in this case, Commerce investigated Essar's receipt of benefits from nine separate subsidies provided under the CIP by the State Government of

---

[11]  Essar Steel, Limited v. United States, 908 F. Supp. 2d 1306 (Ct. Int'l Trade 2013) ("Essar V").

[12]  Id. at 1313.

[13]  Id. at 1311-1312.

Chhattisgarh.[14]  In response to Commerce's requests for information on its use of

and benefit from the CIP subsidies, Essar repeatedly denied receiving any CIP

subsidies based solely on its claim that "Essar does not have any manufacturing

facilities in the State of Chhattisgarh."[15]  Based on this claim, Essar failed to

provide any information on the CIP subsidies and did not answer any of

Commerce's other questions about the CIP subsidies.[16]

As Commerce found (and as this Court subsequently affirmed in Essar III),

Essar's claims of non-use were flatly contradicted by other information which the

company itself had placed on the record.[17]  Indeed, Essar's questionnaire responses

documented the construction of the company's iron ore beneficiation plant in

---

[14]  See Issues and Decision Memorandum in Certain Hot-Rolled Carbon Steel Flat Products from India, 74 Fed. Reg. 20923 (Dep't Commerce Apr. 29, 2009) (final results) ("2007 AR Final IDM") at 6-7, 22-23, and 33-35 (Comment 2) (JA 20-21, 36-37, and 47-49).

[15]  Essar Questionnaire Response (May 9, 2008) ("Essar QR") at III-68 – III-69 (Public Version) (JA 531-533); Commerce's Sept. 29, 2008 Supplemental Questionnaire (Sept. 29, 2008) at 11, Question M.1 (Public Version) (JA 534-535); Essar's Supplemental Response (Oct. 17, 2008) ("Essar's Oct. 17 Supplemental Response") at 18-19 (Public Version) (JA 536-538);

[16]  See Essar QR at III-68 – III-69 (Public Version) (JA 531-533); Essar's Oct. 17 Supplemental Response at 18-19 (Public Version) (JA 536-538).

[17]  See Essar III, 678 F.3d at 1274-1279.

Chhattisgarh, its operation during the POR, and the important role it played in

Essar's production of the subject merchandise during the POR.[18]

During the underlying administrative review, the GOI and the State

Government of Chhattisgarh also failed to respond to Commerce's requests for

information on the CIP subsidies.[19]  As a consequence, Commerce lacked

information concerning the number and amount of the CIP subsidies that were

granted to any company, the recipients of the subsidies, and other critical

information concerning the extent and operation of the CIP subsidy programs on

an aggregate and company-specific basis.

---

[18]  See id.

[19]  See Countervailing Duty Questionnaire (Feb. 28, 2008) at Section II, pp. II-30 –
II-31 (Public Document) (JA 539-541); Government of India Response to
Commerce's Countervailing Duty Questionnaire (May 5, 2008) (Public
Document) 75-77 (JA 542-545); Commerce Letter Requesting Response from
Indian State Governments (May 6, 2008) (Public Document) (JA 546) (again
requesting information on the CIP and other Indian state government subsidies
and extending the deadline for responses); Government of India Letter (May 23,
2008) (Public Document) (JA 547-548) (explaining that the Government of
India requested that the Indian state governments respond, and promising to
provide information in response to Commerce's questions "as soon as it is
received from the State Governments" but providing no other information);
Certain Hot-Rolled Carbon Steel Flat Products from India, 73 Fed. Reg. 79791
(Dep't Commerce Dec. 30, 2008) (prelim. results) (discussing the failure of the
Government of India and Indian state governments to respond to Commerce's
repeated requests for information on the Indian state government subsidies) (JA
549-560); 2007 AR Final IDM at 6-7, 22-26, and 34-35 (JA 20-21, 36-40, and
48-49).

In the Final Results, Commerce found that AFA should be applied with respect to Essar's use of and benefit from the CIP subsidies.[20]  Specifically, Commerce determined that due to Essar's failure to provide responses to Commerce's requests for information on Essar's use of and benefit from the CIP subsidies, Commerce was required to rely on facts available pursuant to 19 U.S.C. § 1677e(a).[21]  Moreover, Commerce found that the application of an adverse inference – i.e., AFA – was warranted under 19 U.S.C. § 1677e(b) because Essar had failed to act to the best of its ability to respond to Commerce's requests for information when it repeatedly denied receiving CIP subsidies based solely on its claim that it had no facilities in Chhattisgarh despite the clear record evidence to the contrary.[22]  Commerce further found that the failure of the GOI and the State Government of Chhattisgarh to respond to its repeated requests for information about the CIP subsidies warranted a finding, as AFA, that each of the CIP subsidies provided a financial contribution and was specific within the meaning of the statute.[23]

---

[20]  2007 AR Final IDM at 6-7, 22-26, and 34-35 (JA 20-21, 36-40, and 48-49).

[21]  Id. at 6-7 and 34-35 (JA 20-21 and 48-49).

[22]  Id.

[23]  Id. at 5, 22-23, and 34-35 (JA 19, 36-37, and 48-49).  These findings have never been challenged.  See Essar I, 721 F. Supp. 2d at 1287-1288.

Due to the failure of Essar, the GOI, and the State Government of Chhattisgarh to respond with information on the CIP subsidies, Commerce had no information concerning the actual level of subsidization provided under the CIP to Essar or any other company. Accordingly, to determine an AFA rate for each CIP subsidy, Commerce looked to the actual experience of Essar and other Indian producers of hot-rolled steel with respect to similar subsidies provided by Indian state governments and the GOI.[24] The subsidy rates thus selected were calculated subsidy rates for GOI and Indian state government subsidies that Essar and other Indian hot-rolled steel producers had reported actually receiving in the countervailing duty investigation and prior administrative reviews of the Order with respect to their production of hot-rolled steel.[25]

Essar subsequently challenged Commerce's application of AFA with respect to the company's use of and benefit from the CIP subsidies during the 2007 administrative review.[26] In Essar Steel Limited v. United States ("Essar III"), this Court upheld Commerce's application of AFA with respect to Essar's use of and benefit from the CIP subsidies. Specifically, the Court ruled that Commerce had correctly declined to consider documents regarding the CIP subsidies that Essar

---

[24] 2007 AR Final IDM at 23-26 (JA 37-40).

[25] Id.

[26] Essar I, 721 F. Supp. 2d at 1287-1288.

submitted on the record of a separate case (i.e., the 2010 remand proceedings in an appeal of the final results of the 2006 administrative review of the Order) only after the application of AFA in this case.[27]  The Court further observed that the *ad valorem* subsidy rates applied by Commerce as AFA were "on par with similar subsidy programs and therefore not punitive."[28]

Following the issuance of this Court's decision in <u>Essar III</u>, Essar requested that the CIT order a remand to Commerce for it to consider whether the subsidy rates applied as AFA to Essar's use of and benefit from the CIP subsidies were adequately corroborated.[29]  In its remand request, Essar claimed that on remand "the record can be opened for additional briefing and oral argument on this issue."[30]  However, Essar failed to discuss any specific arguments or factual information that it believed should be addressed by Commerce should the CIT grant Essar's remand request.[31]

---

[27]  <u>Essar III</u>, 678 F. 3d 1268, 1274-1279 (Fed. Cir. 2012).

[28]  <u>Id.</u> at 1276.

[29]  <u>Essar IV</u>, 880 F. Supp. 2d 1327.

[30]  Essar Remand Request (Sept. 14, 2012) (Public Document) (JA 561-563).

[31]  <u>Id.</u>

In Essar IV, the CIT granted Essar's remand request.[32]  Pursuant to the CIT's remand order, Commerce conducted a remand proceeding to examine whether the subsidy rates that it had applied as AFA with respect to Essar's use of and benefit from the nine CIP subsidies had been adequately corroborated.[33]

Commerce released the draft results of its remand on November 29, 2012.[34] In the draft remand results, Commerce detailed how it corroborated the subsidy rates that it applied as AFA to the CIP subsidies.  Specifically, Commerce explained that because (i) Commerce had never previously calculated subsidy rates for the nine CIP subsidies, (ii) Essar "was the only company respondent" during the 2007 administrative review, and (iii) "neither the GOI nor the State Government of Chhattisgarh submitted the requested information" on the CIP subsidies, "there was no independent information on the record regarding company-specific benefits under the CIP for the Department to use to corroborate" the subsidy rates applied to the CIP subsidies.[35]

Accordingly, Commerce used other information at its disposal to corroborate the AFA subsidy rates, following the standard hierarchy that Commerce has

---

[32]  Essar IV, 880 F. Supp. 2d 1327.

[33]  See Draft Remand Results (Nov. 29, 2012) (Public Document) (JA 500-511).

[34]  Id.

[35]  Id. at 5-8.

10

employed when identifying and corroborating sources of AFA in other countervailing duty proceedings.[36]  Specifically, Commerce explained that it sought to identify subsidy rates calculated based on information provided by Essar and other Indian producers of hot-rolled steel with respect to their receipt of similar subsidies from the GOI and Indian state governments.[37]

For the CIP subsidies involving indirect tax benefits, Commerce explained that it used the 3.09 percent *ad valorem* subsidy rate that had been calculated based on information provided by Essar with respect to its receipt of similar benefits from another Indian state government in the 2004 administrative review of the Order.[38]  For the CIP subsidies that involved the provision of grants or other non-recurring subsidies, Commerce stated that it used a net subsidy rate of 6.06 percent *ad valorem*, which was the rate calculated for Indian hot-rolled steel producer Steel Authority of India, Ltd. for a similar grant program in the countervailing duty investigation of hot-rolled steel from India.[39]  Finally, for the CIP subsidy involving the allotment of land in industrial areas at a discount of up to 100 percent, Commerce explained that this subsidy appeared to involve the provision of a good

---

[36]  Id. at 4-11.

[37]  Id.

[38]  Id. at 5.

[39]  Id. at 6.

(i.e., land) for less than adequate remuneration, and, as a result, it was similar to the GOI's provision of captive mining rights for less than adequate remuneration for which Commerce had recently calculated a subsidy rate of 18.08 percent *ad valorem* based on information provided by another Indian hot-rolled steel producer.[40]

Commerce explained that it found these subsidy rates to be reliable and relevant indicators of Essar's experience of subsidization under the CIP subsidies because they were calculated for fully cooperating Indian hot-rolled steel producers (including Essar) using subsidy information provided by those companies with respect to similar subsidies from the GOI and Indian state governments.[41]  Furthermore, Commerce emphasized that it was required to rely on such rates because it lacked any other source of independent information on the actual company-specific benefits resulting from CIP subsidies due to the failure of Essar, the GOI, and the State Government of Chhattisgarh to respond.[42] Commerce also emphasized that Essar had not presented any evidence "of other, more probative subsidy rates on the record that the Department should have

---

[40] Id.

[41] Id.

[42] Id. at 8-10.

used."[43]  Nevertheless, Commerce invited interested parties to submit comments on the draft remand results.[44]

On December 6, 2012, Essar filed a brief with Commerce commenting on the draft remand results.[45]  In its brief, Essar raised no arguments regarding other potential sources of AFA on the record of the 2007 administrative review that, in Essar's view, the agency should have considered.  In fact, Essar made no reference of any kind to the record of the 2007 administrative review at issue.[46]  Instead, Essar exclusively quoted from and cited to the CIT's 2010 decision in United States Steel Corporation v. United States ("U.S. Steel").[47]

However, the record in U.S. Steel was very different from the record here because that record included supplemental information on the CIP subsidies that Essar provided only after Commerce had applied AFA with respect to the CIP subsidies in this case.[48]  Specifically, as this Court explained in Essar III, the CIT's

---

[43]  Id. at 11.

[44]  Id. at 12.

[45]  Essar Comments on Draft Remand Results (Dec. 6, 2012) (Public Document (JA 145-154).

[46]  Id.

[47]  See id. at 3-4 (citing and quoting U.S. Steel, 2010 Ct. Int'l Trade LEXIS 107, CIT Slip. Op. 2010-104 (Ct. Int'l Trade Sept. 13, 2010)).

[48]  See U.S. Steel, 2010 Ct. Int'l Trade LEXIS 107, CIT Slip. Op. 2010-104 (Ct. Int'l Trade Sept. 13, 2010).

decision in U.S. Steel pertained to the remand proceedings of the 2006 administrative review that Commerce had conducted after Commerce issued the Final Results in this case.[49]  In the remand proceedings at issue in U.S. Steel, Essar produced additional documents and provided additional arguments concerning the CIP subsidies and their administration by the State Government of Chhattisgarh in India.[50]  By doing so, Essar enabled Commerce to conduct a far more detailed and extensive analysis of Essar's use of the CIP subsidies for the period of review at issue in that case than Commerce had been able to perform in this case due to the failure of Essar, the GOI, and the State Government of Chhattisgarh to cooperate.[51]

On January 11, 2013, Commerce filed its final remand results with the CIT.[52]  Commerce again explained in detail how it had selected and corroborated the subsidy rates that it applied as AFA for the CIP subsidies.[53]  As Commerce explained, by matching the subsidy programs at issue with previously calculated subsidy rates "that are the same in terms of the type of benefit (e.g., grant to grant, loan to loan, indirect tax to indirect tax)," it was able to determine AFA subsidy

---

[49]  See Essar III, 678 F.3d at 1272, 1275-1276, 1278.

[50]  See id. and U.S. Steel, 2010 Ct. Int'l Trade LEXIS 107, CIT Slip. Op. 2010-104 (Ct. Int'l Trade Sept. 13, 2010).

[51]  See Essar III, 678 F.3d at 1272, 1275-1276, 1278.

[52]  Final Remand Results (Public Document) (JA 512-530).

[53]  Id. at 3-12, 16-19.

rates that were (i) reliable because they were based on information that Essar or a similarly-situated Indian hot-rolled steel producer submitted concerning their actual experience of subsidization in India and (ii) relevant to the subsidies at issue because they were actual, calculated subsidy rates for a similar subsidy.[54]

Commerce also addressed the arguments raised by Essar in its comments on the draft remand. Specifically, Commerce found that the information from the 2006 administrative review cited by Essar in its comments on the draft remand results had already been properly rejected by Commerce (as this Court held in Essar III) and was not on the record of the 2007 administrative review at issue.[55] Commerce further emphasized that because eligibility for a subsidy program may change over time, it conducts a full examination of a respondent's eligibility for a subsidy in each administrative review and does not assume that non-use in one POR means non-use in a subsequent POR.[56] Consequently, regardless of the information subsequently produced by Essar regarding its use of the CIP subsidies in the 2006 administrative review, Commerce found that it was still required to examine Essar's use of the CIP subsidies during the POR of the 2007

---

[54] Id. at 18-19.

[55] Id. at 16-17.

[56] Id.

administrative review.[57]  Commerce went on to find that it was severely limited in its ability to do so by the complete failure of Essar, the GOI, and the State Government of Chhattisgarh to cooperate, since "unlike other types of information, such as publicly-available data on the national inflation rate of a given country or national average interest rates, there typically are no independent sources for data on company-specific benefits resulting from countervailable subsidy programs."[58] Finally, Commerce explained that it was reasonable to infer, as it did, that a non-cooperating respondent used each of the programs at issue because to "conclude otherwise would allow parties to benefit from their own lack of cooperation" and the "statute allows the Department to draw an adverse inference where a party has failed to cooperate to the best of its ability."[59]

Subsequently, Essar filed a brief with the CIT challenging Commerce's final remand results.[60]  In its brief, Essar raised entirely new arguments on the issue of corroboration that it had failed to raise in any of its earlier submissions before Commerce or the courts in this appeal.[61]  Specifically, Essar for the first time

---

[57]  Id.

[58]  Id. at 9.

[59]  Id. at 16-18.

[60]  Essar Comments on Final Remand Results (Feb. 26, 2013) (Public Document) (JA 155-164).

[61]  Id. at 2-8.

claimed that Commerce erred in its AFA determination because Commerce (i) applied the AFA subsidy rates determined for the CIP subsidies to the entire value of the subject merchandise sold by Essar; (ii) did not consider whether Essar could have benefitted from all of the CIP subsidy programs; (iii) found that Essar benefited from two programs which, according to Essar, had mutually exclusive eligibility requirements under the CIP; and (iv) ignored information on the record that purportedly showed that certain CIP subsidies were subject to caps on the maximum level of subsidy benefits available.[62]

On April 9, 2013, the CIT issued an opinion upholding Commerce's final remand results.[63]  Specifically, the CIT found that Commerce had correctly corroborated the subsidy rates applied as AFA to Essar's use of the nine CIP subsidies.[64]  The CIT also found that Essar had failed to exhaust its administrative remedies and thereby waived the additional arguments concerning corroboration that Essar had raised for the first time in its brief to the CIT commenting on the final remand results.[65]

---

[62]  Id. at 3-8.

[63]  Essar V, 908 F. Supp. 2d 1306.

[64]  Id. at 1313.

[65]  Id. at 1311-1312.

## SUMMARY OF ARGUMENT

Commerce fully complied with the requirements of the statute and its regulations and practice when it corroborated the subsidy rates that it applied as AFA to Essar's use of and benefit from the CIP subsidies during the 2007 administrative review. Indeed, on remand from the CIT following this Court's decision in <u>Essar III</u>, Commerce conducted a thorough analysis of the subsidy rates applied as AFA and fully corroborated those rates to the extent practicable. Specifically, Commerce selected as AFA the actual subsidy rates that had been calculated for Essar and other Indian producers of hot-rolled steel with respect to similar subsidy programs based on information that Essar and the other Indian producers had themselves provided. The rates selected were reliable because they were based on information that Essar and other Indian producers had provided and that Commerce had thoroughly investigated and verified over the course of several prior administrative reviews and the investigation of hot-rolled steel from India. Moreover, the rates selected were relevant to Essar's own experience of subsidization as a hot-rolled steel producer in India because they reflected rates for subsidies that Essar and other Indian producers had actually received with respect to their production of hot-rolled steel in that country. Accordingly, Commerce's determination that the rates selected were probative of Essar's experience of subsidization under the CIP subsidies is supported by substantial evidence and in

18

accordance with the statute and Commerce's regulations and practice. It should, therefore, be upheld.

The Court should also uphold the CIT's determination that Essar failed to exhaust its administrative remedies regarding several new arguments on corroboration that Essar never raised before Commerce. In conducting its corroboration analysis on remand, Commerce gave Essar ample opportunity to submit new information and arguments in support of Essar's contention that the subsidy rates applied as AFA were not corroborated. Despite this opportunity, and despite the fact that the record of this case has been unchanged since the issuance of Commerce's Final Results in 2009, Essar waited until after Commerce had filed its final remand results with the CIT to assert several new claims regarding the CIP subsidies that it had never raised in the proceedings before the agency. In light of these facts, and in accordance with 28 U.S.C. § 2637(d) and this Court's precedent, the CIT properly exercised its discretion to require the exhaustion of administrative remedies in holding that Essar had waived the new arguments in question.

For all of these reasons, Essar's challenges to Commerce's remand results and the CIT's decision in Essar V are without merit. Accordingly, this Court should uphold Commerce's remand results and the CIT's decision below in their entirety.

## STANDARD OF REVIEW

This Court reviews a CIT decision regarding Commerce's countervailing duty determinations *de novo*, "applying the same standard of review to Commerce's determinations as did the CIT."[66]  Accordingly, this Court will uphold Commerce's determination unless it is "'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"[67]  Substantial evidence has been defined as something less than the weight of the evidence.[68]  It is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[69]

Under the substantial evidence standard of review, the Court must sustain Commerce's determination if it is reasonable and supported by the record evidence as a whole, even if there is some evidence that detracts from Commerce's

---

[66] Sahaviriya Steel Indus. Pub. Co. Ltd. v. United States, 649 F.3d 1371 (Fed. Cir. 2011) (citing Carpenter Tech. Corp. v. United States, 510 F.3d 1370, 1372 (Fed. Cir. 2007)).

[67] Id. (quoting 19 U.S.C. § 1516a(b)(1)(B)(I)).

[68] Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 619-20 (1966); Asociacion Colombiana de Exportadores de Flores v. United States, 6 F. Supp. 2d 865, 872 (Ct. Int'l Trade 1998).

[69] United States Steel Corp. v. United States, 621 F.3d 1351, 1357 (Fed. Cir. 2010) (citing and quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951)).

conclusions.[70]  Indeed, this Court has recognized that "'{t}he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"[71]

To determine whether Commerce's actions are in accordance with law, the Court applies the two-prong test set forth in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.[72]  The first step of the test set forth in Chevron requires the Court to determine whether Congress' intent on the issue at hand can be ascertained.[73]  If the text of the statute alone does not conclusively resolve the issue, then the Court must employ the traditional tools of statutory interpretation in order to ascertain Congress' intent.[74]  Such tools include the "statute's structure, canons of statutory construction, and legislative history."[75]

If the Court concludes, after investigation of Congress' intent using the traditional tools of statutory construction, that the intent of Congress is still not clear, the Court will then analyze the issue under the second prong of Chevron.

---

[70]  PPG Indus. v. United States, 978 F.2d 1232, 1236 (Fed. Cir. 1992).

[71]  Id. at 1237 (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 619-20 (1966)).

[72]  467 U.S. 837, 842-43 (1984) ("Chevron").

[73]  Id.

[74]  Timex V.I. v. United States, 157 F.3d 879, 881-82 (Fed. Cir. 1998).

[75]  Id. at 882.

This second prong requires the Court to determine whether the agency's interpretation "is based on a permissible statutory construction."[76]  Under this second prong of <u>Chevron</u>, "{a}ny reasonable construction of the statute is a permissible construction."[77]  Indeed, "{t}o survive judicial scrutiny, an agency's construction need not be the <u>only</u> reasonable interpretation or even the <u>most</u> reasonable interpretation. … Rather, a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another."[78]

It is also well established that "an agency's construction of its own regulations is entitled to substantial deference."[79]  This deference is "broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress' intentions, while in the former it is addressing its

---

[76]  <u>Timken Co. v. United States</u>, 354 F.3d 1334, 1342 (Fed. Cir. 2004).

[77]  <u>Torrington Co. v. United States</u>, 82 F.3d 1039, 1044 (Fed. Cir. 1996).

[78]  <u>Koyo Seiko Co. v. United States</u>, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (citing <u>Zenith Radio Corp. v. United States</u>, 437 U.S. 443, 450 (1978)) (emphasis added).

[79]  <u>Martin v. Occupational Safety and Health Rev. Comm'n</u>, 499 U.S. 144, 150 (1991) (citing <u>Lyng v. Payne</u>, 476 U.S. 926, 939 (1986)).

own."[80]  Accordingly, the "agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation."[81]

Pursuant to 28 U.S.C. § 2637(d), the CIT "shall, where appropriate, require the exhaustion of administrative remedies."[82]  As this Court has explained:

> The doctrine of exhaustion of remedies provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.  The CIT generally takes a strict view of the requirement that parties exhaust their administrative remedies. . . . Even where Congress has not clearly required exhaustion, sound judicial discretion governs.[83]

This Court thus reviews a decision by the CIT to require the exhaustion of administrative remedies "for an abuse of discretion."[84]

## ARGUMENT

### I.    Commerce Correctly Corroborated The Subsidy Rates Applied As AFA With Respect To Essar's Use Of And Benefit From The Nine CIP Subsidies

Following this Court's decision in Essar III upholding the application of AFA, the CIT granted Essar's motion for a remand to consider whether the subsidy

---

[80.] Cathedral Candle Co. v. U.S. Int'l Trade Comm'n, 400 F.3d 1352, 1363-64 (Fed. Cir. 2005).

[81] Torrington Co. v. United States, 156 F.3d 1361, 1364 (Fed. Cir. 1998).

[82] 28 U.S.C. § 2637(d).

[83] Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States, 716 F.3d 1370, 1381 (Fed. Cir. 2013) ("Bestpak") (internal citations and quotations omitted).

[84] Id.

rates applied as AFA to Essar's use of and benefit from the CIP subsidies had been adequately corroborated.[85]  In its remand order, the CIT instructed Commerce to explain how it had adequately corroborated, to the extent practicable, the countervailing duty rates that it applied as AFA for the nine separate subsidies provided under the CIP.[86]

Essar claims that the final remand results that were subsequently issued by Commerce failed to adequately corroborate the subsidy rates that Commerce applied as AFA to each of the CIP subsidies at issue.[87]  As shown below, Essar's challenges to the final remand results are devoid of merit and should be rejected.

In its final remand results, Commerce properly corroborated the subsidy rates that it applied as AFA with respect to the CIP subsidies by relying on independent information concerning the use of and benefit from similar subsidies provided to Essar and other Indian hot-rolled steel producers by the GOI and Indian state governments.  Pursuant to the statute, Commerce is authorized to

---

[85]  Essar IV, 880 F. Supp. 2d at 1331-1332.  In Essar IV, the CIT rejected Essar's claim that the subsidy rates applied as AFA were punitive.  Id.  Essar has not challenged that finding in any of the subsequent proceedings before Commerce, the CIT, or this Court.  See Essar Comments on Final Remand Results (Feb. 26, 2013) (Public Document) (JA 155-164); Essar V, 908 F. Supp. 2d 1306; Essar Opening Brief (July 22, 2013) ("Essar Br.") at 9-41 (Public Document).

[86]  Essar IV, 880 F. Supp. 2d at 1331-1332.

[87]  Essar Br. at 12-40.

apply AFA in a countervailing duty proceeding when an interested party fails to act to the best of its ability to respond to Commerce's requests for information.[88]  In applying an adverse inference, the statue permits Commerce to rely upon information derived from, *inter alia*, a final determination in an antidumping or countervailing duty investigation or a previous administrative review.[89]  The statute further provides that:

> When {Commerce} relies on secondary information rather than on information obtained in the course of an investigation or review, {Commerce} . . . shall, to the extent practicable, corroborate that information from independent sources that are reasonably at {Commerce's} disposal.[90]

The Statement of Administrative Action accompanying the Uruguay Round Agreements Act (the "SAA") explains that to "{c}orroborate" in this context means that Commerce "will satisfy {itself} that the secondary information to be used has probative value."[91]  Nevertheless, the SAA is also clear that "{t}he fact

---

[88]  19 U.S.C. §§ 1677e(a) and 1677e(b); Essar III, 678 F.3d at 1274-1277; F.Lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("De Cecco").

[89]  19 U.S.C. § 1677e(b).

[90]  Id. § 1677e(c).

[91]  SAA, H.R. Rep. No. 103-316 (1994) at 870, reprinted in 1994 U.S.C.C.A.N. 4040, 4199.  See also 19 C.F.R. § 351.308(d) (same).

that corroboration may not be practicable in a given circumstance will not prevent {Commerce} from applying an adverse inference."[92]

In interpreting the corroboration requirement as set forth in 19 U.S.C. § 1677e(c) and the SAA in the context of antidumping duty proceedings, this Court has held that an AFA rate is adequately corroborated where it is shown to represent a "reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance."[93]  Furthermore, "in selecting a reasonably adverse facts-available rate, Commerce must balance the statutory objectives of finding an accurate dumping margin and inducing compliance, rather than creating an overly punitive result."[94]

Pursuant to these requirements, Commerce has established a practice of "assess{ing} the probative value of secondary information by examining the reliability and relevance of the information to be used" as AFA.[95]  In the context of

---

[92]  SAA, H.R. Rep. No. 103-316 (1994) at 870, reprinted in 1994 U.S.C.C.A.N. 4040, 4199.

[93]  De Cecco, 216 F.3d at 1032.

[94]  Timken Co. v. United States, 354 F.3d 1334, 1345 (Fed. Cir. 2004) (citing De Cecco, 216 F.3d at 1032).

[95]  See Essar V, 908 F. Supp. 2d at 1310; Final Remand Results at 4-5 (JA 515-516); Mittal Steel Galati S.A. v. United States, 491 F. Supp. 2d 1273, 1278 (Ct. Int'l Trade 2007) (citing Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom, 70 Fed. Reg. 54711, 54712-54713 (Dep't Commerce Sept. 16, 2005) (final results)); Yantai

*(cont'd)*

26

countervailing duty proceedings, Commerce has sought to assure itself of the

reliability and relevance – and thus the probative value – of a subsidy rate applied

as AFA by following an established hierarchy of potential sources of AFA.

Specifically, as the CIT summarized in <u>Essar V</u>, under its established

practice:

> Commerce first attempts to apply the highest, above *de minimis*
> subsidy rate calculated for an identical {subsidy} program from any
> segment of the {countervailing duty} proceeding.  Absent a calculated
> above *de minimis* subsidy rate from an identical program, the
> Department then seeks a subsidy rate calculated for a similar program.
> Absent such a rate, the Department then resorts to the third step in its
> hierarchy, an above *de minimis* calculated subsidy rate for any
> program from any CVD proceeding involving the country in which
> the subject merchandise is produced, so long as the producer of the
> subject merchandise or the industry to which it belongs could have
> used the program for which the rates were calculated.[96]

As the CIT went on to underscore, Commerce's use of a standard hierarchy of

reliable and relevant sources of AFA is particularly important in the countervailing

duty context "when selecting a proxy subsidy rate for an uncooperative respondent

because unlike other types of information, such as publicly available data on the

---

*(cont'd from previous page)*
   <u>Xinke Steel Structure Co. v. United States</u>, 2012 Ct. Intl. Trade LEXIS 96, Ct.
   Int'l Trade Slip Op. 2012-95 (Ct. Int'l Trade July 18, 2012).

[96] <u>Essar V</u>, 908 F. Supp. 2d at 1310-1311 (citing Issues and Decision
   Memorandum in <u>Circular Welded Austenitic Stainless Pressure Pipe from the
   People's Republic of China</u>, 74 Fed. Reg. 4936 (Dep't Commerce Jan. 28,
   2009)).

national inflation rate of a given country or national average interest rates, there typically are no independent sources for data on company-specific benefits resulting from countervailable subsidy programs."[97]  In other words, Commerce's hierarchy rests on the premise that because information on company-specific benefits provided under a subsidy program is normally not available from any source other than the government providing the subsidy or the recipient, it is reasonable to conclude that a subsidy rate for the same or a similar subsidy program accurately represents the level of subsidization likely to have been bestowed.  By applying a standard hierarchy to identify calculated subsidy rates for the same or similar subsidies provided to the same company or another in the same industry or country, Commerce is able to ensure that the subsidy rates that it applies are as reliable and relevant (and therefore as probative) as possible given the limited information available.  The use of a standard hierarchy also helps to add predictability to Commerce's selection of AFA and prevents the identification of AFA subsidy rates from being arbitrary.

In the remand results in this case, Commerce applied its standard hierarchy to identify reliable and relevant sources of AFA for each of the CIP subsidies. Commerce clearly showed and explained in detail how each of the rates that it applied for the nine CIP subsidies at issue was corroborated to the extent

---

[97]  Essar V, 908 F. Supp. 2d at 1310.

practicable in accordance with the statute and its regulations and practice.[98]

Specifically, Commerce explained that due to the failure of Essar, the Government

of India, and the Indian State Government of Chhattisgarh to respond to any of

Commerce's requests for information, there "was no independent information on

the record regarding company-specific benefits under the CIP for Commerce to use

to corroborate."[99]   In accordance with its normal practice for the selection of AFA

rates in countervailing duty cases, therefore, Commerce further explained that it

looked to the subsidy rates that had been calculated based on verified information

provided by Essar and other Indian producers of hot-rolled steel for similar subsidy

programs in the countervailing duty investigation and prior administrative reviews

of the Order in this case.[100]   For the four CIP subsidies which involved reductions

or exemptions from indirect taxes, Commerce used the rate that had been

calculated based on subsidy data reported by Essar itself for benefits that it

received under the Gujarat Tax Incentives program of the Indian state government

of Gujarat.[101]   Similarly, for the four CIP subsidies which involved the provision of

grants and similar non-recurring subsidies, Commerce used the subsidy rate that

_____

[98]   Final Remand Results at 3-12 and 16-19 (JA 514-523 and 527-530).

[99]   Id. at 9.

[100]   Id. at 5-9.

[101]   Id. at 5-6.

had been calculated based on information reported by Indian hot-rolled steel producer Steel Authority of India, Ltd. for another Indian government grant program (i.e., the forgiveness of Steel Development Fund loans).[102]  Lastly, for the CIP subsidy involving the provision of a good (i.e., land) for less than adequate remuneration, Commerce used the subsidy rate that had been calculated based on information obtained from another Indian hot-rolled steel producer, Tata Steel Limited, for a similar subsidy (i.e., the provision of captive mining rights for less than adequate remuneration) in the 2006 administrative review.[103]

As Commerce explained, each of the subsidy rates that it applied as AFA was based on actual and verified subsidy data provided by Essar and other Indian hot-rolled steel producers for similar subsidy programs.[104]  Thus, Commerce reasonably concluded that the information provided by Essar and these other Indian hot-rolled steel producers showed the AFA rates in question to be reliable indicators of the behavior of the GOI and Indian state governments with respect to the types of subsidies provided under the CIP.[105]  Moreover, because each subsidy

---

[102] Id. at 6-7.

[103] Id. at 7.  See also Issues and Decision Memorandum in Certain Hot-Rolled Carbon Steel Flat Products from India, 73 Fed. Reg. 40295 (Dep't Commerce July 14, 2008) (2006 AR final results) at 19.

[104] Final Remand Results at 5-7 (JA 516-518).

[105] See id.

rate had been calculated based on data for a subsidy benefitting hot-rolled steel production, each such rate was rationally related to Essar's experience as a hot-rolled steel producer in India.

In fact, the rates determined for the four CIP subsidies which involved reductions or exemptions from indirect taxes were based on information that Essar itself had provided in this proceeding with respect to its experience with a similar tax exemption subsidy provided by another Indian state government.[106] The other rates applied as AFA were also based on the rates for similar subsidy programs reported by other Indian hot-rolled steel producers in the same proceeding and thus reflected the actual experience of subsidization of hot-rolled steel producers in India.[107] As a result, each was relevant to and reflective of Essar's experience with regard to the receipt of subsidies in India that benefitted its production of hot-rolled steel.[108] Indeed, as this Court has already observed in Essar III, the AFA rates applied to Essar for the CIP subsidies were "on par" with the non-AFA subsidy rates calculated and applied for other subsidies provided to Indian producers of

---

[106] Id. at 5-6.

[107] Id.

[108] Id.

hot-rolled steel based on the information that those producers (including Essar) reported to Commerce.[109]

In short, Commerce utilized subsidy rates that were reliable, relevant, and rationally related to Essar's experience of subsidization in India under subsidy programs similar to the CIP subsidies and fully explained its reasons for doing so. The subsidy rates applied as AFA in this case were, therefore, properly corroborated to the extent practicable.[110]  Commerce's corroboration of the AFA subsidy rates is supported by substantial evidence and is otherwise in accordance with law, including the requirements of 19 U.S.C. § 1677e(c) and Commerce's regulations and practice.

Essar nonetheless claims that Commerce did not corroborate the AFA rates applied because, in Essar's view, Commerce failed to rely on "independent sources" that it argues were reasonably at Commerce's disposal.[111]  According to Essar, "{c}orroboration requires testing the secondary information against another source, which is something Commerce did not do."[112]  Essar is flatly wrong.

---

[109] Essar III, 678 F.3d at 1276.

[110] De Cecco, 216 F.3d at 1032.

[111] Essar Br. at 12-20

[112] Essar Br. at 20.

Contrary to the claims of Essar, Commerce did in fact use independent sources to corroborate, to the extent practicable, the calculated subsidy rates applied as AFA to the CIP subsidies, as Commerce explained in the final remand results. Specifically, employing its standard hierarchy of sources of calculated subsidy rates that could be used as AFA, Commerce first sought to identify calculated subsidy rates that were the same as or similar to the CIP subsidies at issue.[113] This necessarily involved a comparison of the CIP subsidies with independent information concerning the use of and benefit from other similar GOI and Indian state government subsidies that Commerce had previously investigated and countervailed in the context of the countervailing duty proceedings on hot-rolled steel from India.[114]

Commerce was severely limited in the sources that were available to it for corroboration purposes. As Commerce explained, "there typically are no independent sources for data on company-specific benefits resulting from countervailable subsidy programs."[115] That was particularly the case in the 2007 administrative review at issue here, since Essar (the only company respondent), the GOI, and the State Government of Chhattisgarh all refused to cooperate with

---

[113] Final Remand Results at 3-12 (JA 514-523).

[114] Id.

[115] Id. at 9.

Commerce's investigation of the CIP subsidies, leaving Commerce with "no independent information on the record regarding company-specific benefits under the CIP."[116]  The only remaining option – and the one which Commerce used, in accordance with its standard hierarchy – was to look to the actual experience involving the subsidies provided to Essar and other Indian producers of hot-rolled steel under similar subsidy programs.[117]  Commerce used subsidy rates that had been calculated based on information provided by Essar and other Indian hot-rolled steel producers with respect to their actual experience of subsidization in India under similar subsidy programs.  Commerce thus tied the subsidy rates selected as AFA to Essar and its actual experience of subsidization under similar subsidy programs.

As the CIT found in Essar V, Commerce's analysis established – to the extent practicable given the circumstances – that "the rates selected are reliable (derived from calculated rates) and relevant (derived from the same type of programs)" and therefore have probative value.[118]  Essar's claims to the contrary notwithstanding, therefore, Commerce correctly corroborated the subsidy rates applied as AFA in accordance with the requirements of the statute and

---

[116] Id.

[117] Id.

[118] Essar V, 908 F. Supp. 2d at 1313.

Commerce's regulations and practice. Indeed, as the CIT emphasized, it is telling in this regard that Essar never came forward with other potential sources of AFA that it considered more probative, despite multiple opportunities to do so.[119]

Essar contends that in upholding Commerce's final remand results, the CIT "abused its discretion" and "erred in ruling that dicta" from this Court's decision in Essar III somehow "obviated or lessened Commerce's corroboration obligations" and "eliminated Commerce's statutory requirement to corroborate secondary information."[120] In fact, Essar makes the startling claim that the CIT "appears to have misconstrued Commerce's finding that Essar did not cooperate to the best of its ability as a finding of fraud" that exempted Commerce from having to corroborate the AFA rates selected.[121] Essar's claims are simply absurd and constitute a complete misinterpretation of the CIT's findings in Essar V.

As discussed above, due to the failure of Essar, the GOI, and the State Government of Chhattisgarh to respond to Commerce's requests for information, the record contained no reliable information concerning the actual level of company-specific benefits provided under the CIP subsidies. As a consequence,

---

[119] Id.

[120] Essar Br. at 28-31.

[121] Id. at 29.

Commerce was constrained in the sources of independent information it could use to corroborate the subsidy rates that it applied as AFA.

In discussing these facts in <u>Essar V</u>, the CIT noted that the lack of information was due in part to Essar's refusal to respond to Commerce's requests for information other than to make "repeated dishonest denials" of the existence of any Essar facility in Chhattisgarh when in fact Essar knew full well that it had such a facility and that the facility was in operation during the POR.[122]  Importantly, however, the CIT did not in any way find or even imply that the fact that Essar may have falsely denied the existence of the Chhattisgarh facilities somehow obviated Commerce from corroborating the AFA that it applied.[123]  To the contrary, in a detailed opinion, the CIT thoroughly examined the corroboration requirements and evaluated at length whether Commerce had properly adhered to them.[124]  And as the CIT found, despite a very limited record, Commerce corroborated the AFA rates to the extent practicable, which is all the statute requires.[125]  The CIT made no finding that Essar had engaged in fraud, nor was such a finding in any way necessary or relevant to its analysis.

---

[122] <u>See</u> <u>id.</u> at 28-31; <u>Essar V</u>, 908 F. Supp. 2d at 1312-1313.

[123] <u>Essar V</u>, 908 F. Supp. 2d at 1312-1313.

[124] <u>Id.</u> at 1306-1313.

[125] <u>Id.</u>

Commerce properly corroborated the subsidy rates that it applied as AFA with respect to the CIP subsidies and fully explained its basis for doing so in its remand results. Accordingly, this Court should uphold Commerce's remand results and the decision of the CIT in <u>Essar V</u> in their entirety.

## II. The CIT Properly Determined That Essar Failed To Exhaust Its Administrative Remedies

The remainder of Essar's brief is devoted to various attempts to resurrect arguments on the issue of corroboration that Essar raised for the first time only after Commerce had issued its final remand results to the CIT.[126] These are the same arguments for which the CIT ruled in <u>Essar V</u> that Essar had failed to exhaust its administrative remedies.[127] Specifically, Essar asserts that Commerce's application of AFA to the CIP subsidies was in error because some of the CIP subsidies were purportedly subject to caps while still others were allegedly mutually exclusive and could not have been simultaneously used by Essar.[128] Essar further claims that because any subsidy provided under the CIP would have been linked to the production of beneficiated iron ore at its Chhattisgarh plant and because iron ore is only one component of hot-rolled steel, it was erroneous for

---

[126] Essar Br. at 23-28 and 31-38.

[127] <u>Essar V</u>, 908 F. Supp. 2d at 1311-1312.

[128] <u>Id.</u>

Commerce to apply the full AFA rate against the value of the finished hot-rolled steel.[129]

As the CIT correctly recognized in <u>Essar V</u>, however, Essar failed to raise any of these arguments before Commerce when it had the chance.[130]  Indeed, Essar had multiple opportunities to make these arguments before Commerce but failed at all times to do so.  The CIT's rejection of the new arguments was therefore proper and fully in accordance with the CIT's discretion under the statute to require the exhaustion of administrative remedies.

Essar's failure to raise any of its new arguments before Commerce is startling given that corroboration was the sole issue confronting the agency on remand and, in fact, was the entire basis for Essar's remand request in the first place.  Essar's complete failure to raise these arguments is also striking since the arguments are entirely based on Essar's interpretation of the record as it existed before Commerce back at the time that Commerce issued its <u>Final Results</u>.

This Court has been very clear that it is within the sound discretion of the CIT to require parties to exhaust their administrative remedies pursuant to the

---

[129] <u>Id.</u> at 26

[130] <u>Essar V</u>, 908 F. Supp. 2d at 1311-1312.

provisions of 28 U.S.C. § 2637(d).[131]  Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."[132]  Requiring exhaustion of administrative remedies promotes judicial economy and may obviate the need for judicial review altogether.[133]  Indeed, "{s}imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."[134]  Accordingly, this Court has repeatedly emphasized that the prescribed avenue for challenging Commerce's remand results is to file comments on the draft results at the administrative level, setting forth all of the party's objections.[135]

---

[131] Bestpak, 716 F.3d at 1380-1381; Corus Staal B.V. v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007) ("Corus Staal"); Sandvik Steel Co. v. United States, 164 F.3d 596, 599 (Fed. Cir. 1998) ("Sandvik").

[132] Sandvik, 164 F.3d at 599 (Fed. Cir. 1998).

[133] Corus Staal, 502 F.3d at 1379 (Fed. Cir. 2007).

[134] Mittal Steel Point Lisas Ltd. v. United States, 548 F.3d 1375, 1383-1384 (Fed. Cir. 2008) ("Mittal Steel") (citing and quoting United States v. L.A. Tucker Truck Lines Inc., 344 U.S. 33, 37 (1952)).

[135] See Taian Ziyang Food Co., Ltd. v. United States, 918 F. Supp. 2d 1345 (Ct. Int'l Trade 2013) (summarizing this Court's ruling in Mittal Steel, 548 F.3d at 1383-1384 (Fed. Cir. 2008)); Bestpak, 716 F.3d at 1380-1381.

By failing to raise its new arguments concerning corroboration when it had the opportunity, Essar deprived Commerce of the chance to address them, preventing the agency from applying its expertise to the matter. The CIT's rejection of Essar's new arguments was, therefore, plainly proper and fully within the CIT's discretion, as provided for by 28 U.S.C. § 2637(d).[136]

In its brief before this Court, Essar attempts to excuse its repeated failure to raise the new arguments by claiming that Commerce's corroboration analysis was somehow unclear. According to Essar, "reasonable allowance should have been made for Essar's reduced ability to criticize Commerce's opaque presentation of the AFA rate corroboration analysis."[137] In other words, Essar appears to claim

---

[136] Nor can Essar argue that Commerce should have somehow been familiar with its new arguments because they had been raised in Essar's briefs before the CIT. In fact, while Essar discussed the issue of corroboration at significant length in its Complaint and opening brief before the CIT, it never once raised any of the arguments in question on the issue of corroboration. See Complaint of Essar Steel Limited, CIT Case No. 09-197 (May 14, 2009) at 8 (JA 564-567); Essar Opening Br. in CIT Case No. 09-197 (Nov. 4, 2009) at 33-39 (Public Version) (JA 568-575). Essar further failed to even mention these arguments when it sought a remand at the CIT on the issue of corroboration following this Court's ruling in Essar III. See Essar Remand Request (Public Document) (JA 561-563); Essar Comments on Draft Remand Results (Dec. 6, 2012) (Public Document) (JA 561-563).

[137] Essar Br. at 35.

that it somehow had "no opportunity" to raise its arguments before the agency.[138] Essar's claim is simply baseless.

In fact, the issue of corroboration and Commerce's approach to it have been fully in play from the very outset of this appeal. In the <u>Final Results</u> of the 2007 administrative review, Commerce utilized the same sources of AFA that were at issue in the remand proceeding.[139] In its initial appeal of the <u>Final Results</u>, Essar challenged Commerce's corroboration of those AFA subsidy rates.[140] The underlying record at that time was identical to that on review here. Essar thus was fully aware of Commerce's approach to corroboration and had the means and every opportunity to raise its new arguments. It simply failed to do so.

In the remand ordered by the CIT following this Court's decision in <u>Essar III</u>, Essar had a clear and unencumbered opportunity to raise its additional arguments concerning corroboration but simply failed to do so.[141] Again, all the information on which Essar now attempts to rely was on the record, yet Essar raised none of its new arguments.[142] Essar's failure to do so is particularly striking given that in its

---

[138] <u>Id.</u> at 34-35.

[139] <u>2007 AR Final IDM</u> at 6-7, 22-26, and 34-35 (JA 20-21, 36-40, and 48-49).

[140] <u>See</u> Essar Opening Br. in CIT Case No. 09-197 (Nov. 4, 2009) at 33-39 (Public Version) (JA 568-575).

[141] <u>See</u> Essar Remand Request (Public Document) (JA 561-563).

[142] <u>See</u> <u>id.</u>

request for the remand, Essar explicitly sought the opportunity to provide additional briefing on the issue of corroboration.[143]

In the draft remand results, Commerce expanded on its corroboration analysis and specifically invited comments from the parties on all aspects of the corroboration issue.[144]  Despite filing comments on the draft remand results, however, Essar once again failed to raise any new arguments, preferring to rely exclusively on the CIT's opinion in U.S. Steel discussing the record of the separate remand of the 2006 administrative review which this Court had already held (in Essar III) was properly rejected by Commerce.[145]

In short, absolutely nothing had changed with regard to the relevant law or the facts between the issuance of the draft remand results and the final remand

---

[143] Id. at 3.

[144] Draft Remand Results (Public Document) (JA 500-511).

[145] Essar Comments on Draft Remand Results (Dec. 6, 2012) (JA 145-154).  In its opening brief here, Essar claims that it made references to the CIT's ruling in Essar I (i.e., the CIT's initial decision in the appeal of the 2007 administrative review) in its comments on the draft remand results.  Essar Br. at 26-27.  Essar is simply incorrect.  In fact, all references and quotations in Essar's comments on the draft remand results are to the CIT's ruling in U.S. Steel, which involved an entirely separate and distinct record (i.e., the record of the 2010 remand of the 2006 administrative review of the Order).  See Essar Comments on Draft Remand Results (Dec. 6, 2012) (Public Document) at 3-4 (JA 147-148) (quoting and citing exclusively to the CIT's opinion in the appeal of the 2006 administrative review, U.S. Steel, 2010 Ct. Intl. Trade LEXIS 107, CIT Slip Op. 2010-104 (Ct. Int'l Trade Sept. 13, 2010)).

results that in any way justifies Essar's failure to raise its arguments before Commerce.  Indeed, the facts and the law were completely unchanged, Commerce was clear on its approach to corroboration, and Essar had every opportunity to attempt to challenge Commerce's corroboration of the subsidy rates applied as AFA using all possible arguments at its disposal.  This Essar failed to do, depriving Commerce and the parties of the opportunity to address Essar's arguments in the first instance.  Under these circumstances, the CIT's exercise of its discretion to reject Essar's new arguments for failure to exhaust administrative remedies was plainly proper.[146]

Essar nonetheless claims that Commerce had somehow been "alerted" to its new arguments before issuance of the final remand results because, according to Essar, "the undisputed facts needed to decide these issues are found in two documents, in the record."[147]  Essar is flatly wrong.  This Court has been very clear that in order to avoid a waiver of an argument for failure to exhaust administrative remedies, a party must affirmatively raise arguments and bring issues involving documents on the record to the attention of Commerce.[148]  In the recent case of Bestpak, for example, the Court upheld the CIT's rejection of an argument for

---

[146] Essar V, 908 F. Supp. 2d at 1311-1312.

[147] Essar Br. at 36-37.

[148] See Bestpak, 716 F.3d at 1381.

failure to exhaust administrative remedies where the plaintiff had failed to raise an issue regarding a document on the record before Commerce during the remand proceeding.[149]  Instead, like Essar, the plaintiff in <u>Bestpak</u> waited until after Commerce had filed its final remand results with the CIT to bring the issue to Commerce's attention.[150]  This Court upheld the CIT's rejection of the plaintiff's argument for failure to exhaust administrative remedies.[151]  The Court should do the same here.

Moreover, it is simply not the case that, as Essar claims, certain facts on the record are "undisputed."[152]  Essar's untimely arguments and the characterizations of the record on which they rely would have been very much in dispute if Essar had raised its new arguments before Commerce when it had the chance.  If it had, there most certainly would have been ample basis to dispute Essar's assertions and characterizations of the facts.  For example, in one of its untimely new arguments, Essar challenges Commerce's corroboration of the AFA subsidy rates on the grounds that Commerce has erroneously attributed subsidy benefits arising from the iron ore facility in Chhattisgarh that produced "an upstream component" of

---

[149] <u>Id.</u> at 1380-1381.

[150] <u>Id.</u>

[151] <u>Id.</u>

[152] Essar Br. at 37.

Essar's production of hot-rolled steel.[153]  According to Essar, "if beneficiated iron ore actually makes up less than 10% of the cost of hot-rolled carbon steel flat products, then Commerce has overstated the subsidy benefit and resulting AFA rate by more than tenfold."[154]

There is no basis for Essar's contention.  As the statute and the SAA make clear, Commerce is required to determine the "benefit to the recipient" from a countervailable subsidy regardless of the effect of the subsidy and regardless of whether the subsidy is provided directly or indirectly on the manufacture, production, or export of merchandise.[155]  The Chhattisgarh facility at issue was directly owned and operated by Essar.  Thus, any subsidy provided to the company with respect to its Chhattisgarh facility directly benefitted Essar's overall operations in an amount equal to the amount of the subsidy.  There is no basis for Essar's claim that Commerce was somehow required to treat the CIP subsidies as

---

[153] Essar Br. at 26-27, 32, and 37-38.  Although Essar contends (without any support) that it "raised this issue in comments to Commerce," that contention is utterly baseless.  Id. at 26.  As already explained, the first time that Essar raised any of its new arguments was in Essar's brief before the CIT commenting on the final remand results.

[154] Essar Br. at 27.

[155] 19 U.S.C. §§ 1677(5)(C) and 1677(5)(E); SAA, H.R. Rep. No. 103-316 (1994) at 927, reprinted in 1994 U.S.C.C.A.N. 4040, 4240.

upstream subsidies and trace through their effect on the downstream operations of the company.

Similarly, it is not "undisputed" – as Essar claims – that company-specific benefits under the CIP subsidies are subject to limits on the maximum benefits that can be provided or that Essar could have benefitted from only some of the nine CIP subsidies at issue.[156] Due to the failure of Essar, the GOI, and the State Government of Chhattisgarh to cooperate, Commerce in fact had no information at all on the actual company-specific benefits provided under the CIP subsidies, much less whether they may have been capped at certain levels on a company-specific basis or whether certain of the CIP subsidies were mutually exclusive.[157] Nor did Commerce have any other information about how the CIP subsidies actually functioned in practice, particularly as applied on a company-specific basis. The only reliable information concerning the actual experience of subsidization of Indian hot-rolled steel producers by the GOI and Indian state governments consisted of information reported by the GOI, Indian state governments, and Indian hot-rolled steel producers in prior administrative reviews and the countervailing

[156] Essar Br. at 25-26.

[157] Draft Remand Results at 8 (JA 507); Final Remand Results at 9 (JA 520).

duty investigation concerning similar subsidies – information which Commerce used to corroborate the subsidy rates that it applied as AFA.[158]

The point is that Essar's new arguments rest on interpretations of the record that are by no means "undisputed."  By failing to raise its various new arguments until after the filing of Commerce's final remand results, Essar deprived the agency and the other interested parties of the opportunity to engage in any analysis of Essar's claims and address its arguments in the first instance.  Accordingly, the CIT properly found that Essar had failed to exhaust its administrative remedies.

Finally, Essar attempts to avoid the exhaustion requirement by characterizing its arguments as "examples of the failure of corroboration," and not "new arguments."[159]  Essar's characterization is baseless.  Each of the challenges that Essar now attempts to raise to Commerce's corroboration analysis is clearly a new argument – i.e., a "statement that attempts to persuade."[160]  Indeed, elsewhere in its brief, Essar repeatedly describes each of its untimely new claims as "arguments."[161]  Moreover, even assuming for the sake of argument that Essar had done nothing more in its untimely new arguments than to bring information

---

[158] Final Remand Results at 3-12, 16-19 (JA 514-523 and 527-530).

[159] Essar Br. at 36-37.

[160] Black's Law Dictionary 121 (9th ed. 2009).

[161] Essar Br. at 32-33, 38.

already on the record to Commerce's attention, that in and of itself would have been ample grounds for the CIT to find that Essar had failed to exhaust its administrative remedies.[162]

## III.    CONCLUSION

For the foregoing reasons, Commerce properly corroborated the calculated subsidy rates that it applied as AFA with respect to Essar's use of and benefit from the nine subsidies provided under the CIP.  Accordingly, this Court should affirm Commerce's remand results and the CIT's decision in Essar V in their entirety.

Respectfully submitted,

 /s/ Jeffrey D. Gerrish

Robert E. Lighthizer
Jeffrey D. Gerrish
Nathaniel B. Bolin

SKADDEN, ARPS, SLATE
 MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005

Counsel to Defendant-Appellee
United States Steel Corporation

Date:  November 14, 2013

---

[162] Bestpak, 716 F.3d at 1381.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendant-Appellee United States Steel Corporation certifies that this brief contains 12,680 words.  This word count certification is made in reliance on the word count feature of Microsoft Word.


  /s/ Jeffrey D. Gerrish
Jeffrey D. Gerrish
Counsel to Defendant-Appellee
United States Steel Corporation

November 14, 2013

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Essar Steel, Limited v. United States

**No. 2013-1416**

**PUBLIC CERTIFICATE OF SERVICE**

        I hereby certify that on the 14th day of November, 2013, I caused service of the foregoing document by electronic filing using the CM/ECF System, which will send a Notice of Docketing Activity to all parties with an email address of record:

| | |
|---|---|
| Mark P. Lunn, Esq. | David F. D'Alessandris, Esq. |
| **DENTONS US LLP** | Trial Attorney |
| 1301 K Street, N.W. | **U.S. DEPARTMENT OF JUSTICE** |
| Suite 600, East Tower | Commercial Litigation Branch, Civil |
| Washington, D.C. 20005 | Division |
| | P.O. Box 480 |
| *On behalf of Essar Steel, Ltd.* | Ben Franklin Station |
| | Washington, D.C. 20044 |
| | *On behalf of the United States* |

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

_____/s/ Jeffrey D. Gerrish_____
By:    Jeffrey D. Gerrish
       Skadden, Arps, Slate, Meagher
        & Flom LLP
       1440 New York Avenue, N.W.
       Washington, D.C. 20005-2111
       Tel: (202) 371-7000
       Fax: (202) 393-5760
       Jeffrey.Gerrish@skadden.com